And with that, I'll call the second case of the morning, New South Communications v. Houston Casualty Company, or as we would say in Macon, Houston Casualty Company. Good morning. May it please the Court. This is Matthew Schruble representing the appellants in this case. This case involves an insurance policy that insured several buildings. These buildings were damaged by Hurricane Irma, and the insurance company in this case denied coverage for the interior of the buildings that were damaged by Hurricane Irma. There was ample evidence in the record showing that the damage to the interior of the buildings was covered by the insurance policy. However, this issue was never reached because the Court erroneously granted summary judgment in favor of the insurance company in this case. The first basis for granting or one of the basis for granting summary judgment has now undisputably been confirmed to be incorrect. The District Court found that it should follow the Florida 3rd District Court of Appeal and speculated that the Florida 3rd District Court of Appeal would not follow other appellate courts in Florida. It would not require a finding of prejudice. That has now been conclusively established to be incorrect. The 3rd DCA has issued several decisions, including American Integrity v. Estrada, which stated that the 3rd District Court of Appeal agreed with the 5th District that an insurer must be prejudiced by an alleged noncompliance with policy conditions. As a result of that decision, it is clear that the Court erred as a matter of law and never considered the issues of prejudice, which it must have. Likewise, the Court never made the decision to not follow other appellate decisions, which have held that an insurance company waives compliance with policy conditions when it either admits liability in some amount or denies part of the claim, both of which occurred here. We cited the 4th District Court of Appeal's decision in Bryant v. Giovera, which the District Court did not follow. Once again, the 3rd District has confirmed in several recent decisions which we have submitted that an insurance company waives compliance with policy conditions when it issues a partial denial of the claim, exactly what occurred here. The District Court likewise erred when it found that the facts supported that the insurance company paid the proper amount. It impermissibly stepped into the role of the fact finder in this case. A reply brief sets forth some of the testimony that the District Court must have found to support the claim, and it's clearly erroneous when there was ample evidence from both the insurance engineer and even the insurer's engineer that there was damage caused to the interior of the property, which entered the property through wind-created openings. That is clearly a factual dispute. That was the primary issue in this case, and one that the District Court improperly resolved on its own, and by doing so necessarily ignored ample evidence showing that the interior of the property was damaged by wind. Finally, the District Court erred by finding that the plaintiffs in this case did not have standing, and it did so by erroneously concluding that notice of the claim, which the insurance policy merely required to be submitted by the policy named on the declaration page to identify the damaged building, was not sufficient. Both the policy is clear, that the notice provided in this case was sufficient, as well as case law, which makes it clear that both actual notice or notice from an additional insurer is sufficient. And in this case, it is undisputed that the insurance company had noticed that there was damage to the building, that it investigated the damage to the building, and then determined that the damage to the interior of the building was not covered. It received both actual... Yes. I'm looking at what bothers me about the case is the expert opinion from Alfredo Brazula, the plaintiff's expert, and as I read the expert's report, he stops short after he concludes, in our professional opinion, the wind pressure, wind gusts, and airborne debris produced by Hurricane Irma created openings at exterior fenestrations, which I understand means windows, mechanical attachments, and roof assemblies for moisture entry. What's missing is but-for causation, that water actually entered and damaged property. And as I understand the state of the adjuster report from the insurance company, the adjuster went in and looked at it and said whatever damage was there was old. So isn't the burden on your client to establish a prima facie case of but-for causation to survive a summary judgment motion? Well, twofold in response to that. First, I think that our burden is to show damage, and then the shifts to the insurance company show that the damage is excluded. There's no dispute that there was damage. The insurance company was attempting to say that this water damage somehow did not enter the property through wind-created openings. I certainly agree that the affidavit from the engineer is using more technical terms than may be commonly used, but from the sentence that you just read, he's clearly saying that the water entered through wind-created openings, which is the precise issue in this case, in addition to his affidavit. That's not how I'm reading it, and maybe that's the problem here. All he's saying is that the hurricane may very well have created openings, but he doesn't complete the link. He doesn't say, and as a result of that, water entered and all of the following property was damaged. Doesn't the insured have the obligation to establish that in order to avoid the policy exclusion? Yes, as to the interior, and that's why he is saying that the water entered through the interior through fenestrations, wind-created openings, which is the exact issue in this case. We also cite a substantial amount of his deposition testimony as well, which goes into that in more detail. We also point to the insurance company's own engineer in deposition, which the insurance company's very own engineer testified that there was an antenna blown off the roof by wind that caused a hole that allowed water to enter. Despite even the insurance company's own engineer making that confirmation, the insurance company denied coverage for the interior of the damage. Clearly, even by the insurance company's own admission, there was damage into the interior from the hurricane, and they still denied the claim in its totality. Can I ask you a question about that? This is Robin Rosenbaum. It appears to me that they didn't deny complete coverage. What they did instead was they said, we're going to give you coverage for what we find to have been caused by the rain that came in as a result of this hurricane, but we're not going to give you coverage for water damage that appears to have preexisted what happened before the hurricane. Am I misunderstanding? Maybe I am. I think that's pretty much it. They didn't dispute that there was some water intrusion into the interior. They were attempting to say that, yes, it entered the interior, but it did not enter as a result of the hurricane. And as I just pointed out, that was contrary to their actual own engineer's opinion when he was given a deposition where he agreed that there was indeed water damage. Can I offer some warning? Their own engineer did, in fact, agree that water damage entered the property through a wind-created opening. So without a doubt, there was evidence. I'm sorry. How does that contradict? I mean, if their expert said that wind and water entered through the hole that the antenna made in the wall, and they're paying for that, right, how does that contradict their position? I mean, they're just saying, yes, wind and rain entered through the hole the antenna made, but it was limited to this amount in damages. Is that what you're saying, or is it your position they're saying something else? Yes. My position would be that they are indeed saying something else by virtue of their denial letter. And if you look at the testimony from their expert that we cite to in our reply brief, it makes it very clear that they have no evidence at all that they paid for even that damage. They had the damages at $50,000. We had an estimate at $900,000, all supported by expert opinions in this case. And they have no testimony to establish that they paid for the damage that even they admitted. So we have an expert saying that all of the interior damage is caused by wind created openings. Their own expert agrees that a good portion of it was, and they never paid it and they have no evidence to pay it. And on the reply brief on page 10, we cite the testimony from their so-called expert that, you know, supposedly paid the proper amount. And he quite clearly says he has no opinion as to what the amount was owed and because they never even actually inspected the roof. So we had, you know, we presented in this case ample evidence that $900,000 in damages was covered. It was supported by multiple expert opinions and they have no evidence to show that they paid the right amount. That was an issue that wasn't even fair. I just want to make sure I'm understanding the fact. It's not your position that they didn't pay the 52,000, right? Or maybe it is. That is part of our position was outlined. They breached in multiple ways. One, they didn't even pay the 52,000. They refused to pay the amount that even they agreed was owed. They further breached by actually paying for the damage they determined were covered. So their own expert determined that an antenna allowed an opening, which caused damage, and they didn't even pay for that. And then they breached in the third way because as our experts indicated, and as during the claim process, the insured pointed out in great detail, the damage all came from when created openings in the interior and they refused to pay for the interior damage. So there are three different... Was the reason they refused to pay the 52,000 because your client wouldn't sign the proof of loss form that they tendered to cover that $52,000 worth of damage? Yeah, that's the position that they took and that was... You can answer Judge Stallman's question. Okay, yeah. So as our response in the affidavits that we filed made clear, they were under no obligation to sign that proof of loss. What the insurance company said was we'll pay you 52,000. However, you have to agree under oath that that's the amount of the claim, and even though we're aware that you're claiming interior damage, you'll be foreclosed from pursuing that in the future. We filed affidavits making clear why that is improper. They can't make a payment contingent on the insured refusing to pay the other 900,000 insured believe is owed, and that's why they improperly added that condition to issue even the payment they know is owed. Mr. Shule, before you sit down, this is Beverly Martin. I just want to give you my kind of big picture understanding of this because it's a problem for you, and I just want you to be able to... I mean, maybe you've addressed it already, but I think there are definitely problems with the district court order in this case, but at the end of the day, once the district court gets to the merits of the summary judgment motions, the cross-summary judgment motions, I mean, it's proper, is it not, for a district judge to evaluate the cross-summary judgment, evaluate the cross-expert reports, and say there's no real issue of fact that should go to a jury here. I mean, just for me, your expert, Brizuela, I mean, my understanding is Brizuela never even looked at this until about a year after Hurricane Irma, and I mean, I think that's what courts do on summary judgment. They say there's just this expert testimony from the plaintiff just doesn't stand up against the expert testimony given by the insurance company. I mean, you're not saying as a matter... I mean, what is your best answer to that? I mean, I don't see any reason in us sending it back if all the district court is going to do is say, well, I already evaluated these conflicting expert testimonies, and there's just nothing to submit to a jury here. Yeah, my response to that would be that's exactly what a fact-finding role is. If there is any dispute in the evidence, then it is, particularly on summary judgment, then it is to be submitted to the juror. So in this case, the insured have a public adjuster. Any conflict? I mean, you know, things get decided on cross-mission for summary judgment where people are disputing facts. So that's a big... That's a broadening of the requirement for a jury trial the way I understand it. Sure. An issue of material facts. And certainly when the insured is saying that the cover damage is over $900,000 and the insurance company is saying they're $50,000, that's an issue of material facts. Likewise, when the insurance company is saying there's no wind-created openings, and the insured is saying, well, we have evidence from our engineer that says that there are wind-created openings, that is an issue of facts. But your expert doesn't... I'm still having trouble. Your expert doesn't take the next step and say, that's what caused the damage to the following property. Unless he's got something else than what I saw in the record. Did he actually make that causation link? Yeah, that was... I'll look through it on dormitime because that was so clear. But that was never even an issue or a dispute by either party, right? So the answer... His affidavit is... I'm sorry. So the answer is that he didn't say anything more than that, that the hurricane caused the openings and that was... he stopped at that point. Yeah, and he said that that was the moisture insured in this result. That's what his entire opinion is about. It wasn't... that was never an issue raised by anybody, so I'll try to, during my break, try to find other examples, including from this deposition testimony, because that was very clear. Thank you. Thank you. May it please the court. My name is Taylor Davis, and I represent Defendant Appalee Houston Casualty Company, which I'll refer to as HCC. The question before the court in this case is whether the Southern District of Florida correctly dismissed with prejudice on summary judgment this breach of contract case involving a dispute over insurance coverage for alleged commercial property damages arising out of Hurricane Irma. The court's dismissal was based on three grounds, all of which should be affirmed. First, the court lacked subject matter jurisdiction under Article III of the Constitution because each of the three plaintiffs lacked standing to bring the claims asserted. Plaintiff New South Communications, Inc., or New South, lacked standing because it has no insurable interest in any of the property at issue. Plaintiffs Florida Keys Media, LLC, or Florida Keys, and Robert Holliday, a natural person, lacked standing because they never claimed reimbursement under the policy. None of them has suffered an injury in fact, thus there is no case or controversy. Standing is a threshold issue that the court should decide first. Second, none of the plaintiffs submitted a proof of loss to HCC, which is a condition precedent to coverage and to filing suit under the terms of the policy. I'll explain why, even in light of recent case law from Florida's Third District Court of Appeal, dismissal on this basis should be affirmed. Finally, HCC did not breach the policy by applying its unambiguous interior of buildings limitation, which precludes coverage for interior damage caused by rain unless the rain entered through an opening in the building caused by a named peril, in this case, windstorm. As the panel seems to have picked up on, there is no evidence in the record that specific damages fell within the exception to that exclusion other than the ones that my client identified during the adjustment of the claim. Each of these three grounds separately and independently calls for dismissal with prejudice, so the court need only affirm on one for the dismissal to stand. But HCC submits that all three holdings should be affirmed. Subject to any questions the court may have, I plan to focus my time on clearing up certain misrepresentations in plaintiff's appellant's briefs and argument and rest on our briefs as to the remaining issues. This is Beverly Martin. You don't have me on the standing argument. We talk about standing a lot in the 11th Circuit, and all you need for standing is an injury caused by the defendant. Injury here is no payment under the policy caused by a defendant your client refused to pay and that a favorable outcome in the suit could redress the harm. So I don't think it's a standing problem. I think, you know, the question is, does the policy call for you to pay or not? So, you know, for what it's... I don't know. I haven't talked to my colleagues about this, but I think it's a misnomer to refer to this as standing. Well, I'll be happy to address that, Judge Martin. First of all, there are two different issues with respect to New South on the one hand and then Florida Keys Media and Holiday on the other hand. I agree. I mean, New South doesn't have a property that was damaged, so, I mean, if you want to call that standing, I won't fuss about that, but... Okay. Right. So it's clear that New South has no standing. As to the other two, the issue is not who provided notice of the loss, which plaintiffs, appellants, spend a lot of time arguing that New South was required to notify HCC of the loss as the first named insured under the policy. But this is actually a red herring. The point is, at no time did New South, Florida Keys, or Holiday ever tell HCC that Florida Keys and Holiday were seeking reimbursement under the policy. And they had to somehow notify HCC that they suffered... Sorry, counsel. How is that a standing issue? I'm sorry. The policy itself says you, right? And then it defines you as the entities that are insured. So why... I mean, this is sort of a different question than the standing issue, but why is it then that New South, by making the claim, even though obviously it doesn't have standing to sue, can't have made the claim effectively on behalf of Florida Keys, Media, and Holiday? I mean, there's nothing in the policy that says that Florida Keys, Media, and Holiday have to notify you. It says you have to notify HCC. And you can be any of those entities. So why doesn't that work? And also, why is that a standing issue? Well, this court held in Payroll Management Incorporated versus Lexington Insurance Company that additional insureds or additional named insureds under a policy cannot piggyback on the claim made by another insured, that they each have to make a claim for their own damages under the policy. I mean, if you think about the claim they're making, it's a breach of contract claim, but they never asked for money. These two plaintiffs never asked my client for reimbursement under the policy. The claim was always presented as that of New South. And in fact, it wasn't until discovery in the case that we confirmed that New South has no insurable interest in these properties. There are a number of different properties that are insured under the policy, and there are something like 25 different insureds. But each insured has to submit a claim for its own damages. And in the case of... I'm sorry to interrupt, but I just want to make sure that I give you a chance to cover this. It seems to me like this case is distinguishable from Lexington. You know, in this case, as I said, the policy defines you to include each of the named insureds. And all three of these are named insureds. And so one of the named insureds notifies you, and it turns out that it's in the other two named insureds' properties, but even so, they're part of the you that has notified HTC. And in Lexington, it really wasn't clear whether the insured was even a named insured under the policy. And even if it was, it hadn't been named a defendant in the suit where it was speaking to be defended by the insurer. So why isn't that distinguishable? Well, in this case, the two entities that we're discussing never made an appearance in the entire life of the claim until plaintiff New South amended the complaint to add them as parties. So it is, in our view, analogous to the payroll management case versus Lexington, because there was no indication that these two insureds under the policy were in any way aggrieved. They were not seeking damages under the policy. And in the factually analogous case of GNS Holdings, LLC versus Continental Casualty Company out of the Northern District of Indiana, which was affirmed by the Seventh Circuit, that court held that the aggrieved party in a breach of insurance contract case is one who filed an insurance claim and did not receive sufficient payment. So here, these two parties never filed an insurance claim. Yes, my client was aware of the damages, but they had no idea that these two insureds were the ones who actually had an insurable interest in the property. They can't claim for breach of contract when they never asked for money under the policy, and that's exactly what they're trying to do. And from a public policy standpoint, allowing a party to file a breach of contract claim out of the blue, having never notified the party with which it contracted that it was seeking damages would lead to a flood of litigation, a waste of judicial resources, and it's just contrary to the notion of standing that you have to have a case in controversy, an injury in fact, which they don't have. Isn't the problem here in the drafting of the language in the policy as opposed to... I mean, we go on these things based on the drafting of the language in the policy, and we're required under Florida law to construe ambiguities against the insurer. And here, it seems, you know, you use the term you and you define it, and one of the people who qualifies as you provided information about a claim, and it pertains to two of the others under the you. I mean, why isn't the drafting of the policy the problem here for your client as opposed to, you know, our sort of correcting the policy to say what you all meant it to mean? Well, actually, the policy states, quote, we do not cover more than your insurable interest in any property, close quote. That's in the docket at 40-1, page HCC000034. And so there's... And so I completely agree with you that New South does not have standing, but that doesn't address the question of whether a claim was made by one of the you, right? And that because there's that ambiguity there, that that can be applied against others in the so-called you. Well, the problem is that not even New South notified HCC that these other two entities were making claim. If everything had gone according to plan and they had returned the proof of loss, then conceivably my client would have paid the wrong entity, which is New South, because no one ever told HCC. So let me get to the proof of loss issue then. On the proof of loss issue, why doesn't Estrada present a problem for your client? You said you were going to address that. And specifically, why is it that, as you know, under Estrada, I agree with you, they did not make a proof of loss claim. They did not file that. And so that creates a presumption in your client's favour under Estrada that there was a breach of a material condition. But then, under Estrada, we have to look to see whether the insured showed that your client was not prejudiced. And why shouldn't the insured have had an opportunity to do that? I mean, the district court did not address that issue. Understandably, because Estrada hadn't come out at that point. But now that it has, and we're bound to apply Florida law, why shouldn't it be said that, on that basis, for the district court to consider that issue? I would submit, Judge Rosenbaum, that the plaintiff's appellants did, in fact, present evidence of prejudice, albeit they were arguing that the standard was that HCC had to prove prejudice, which, as Estrada has made clear, is not the standard. Rather, they have to prove a lack of prejudice, because, as you noted, there's a presumption of prejudice based on the failure to comply with the policy condition. But the only evidence in the record that they've offered as to why there was prejudice, or, excuse me, why there was not prejudice, is the opinion of their public adjuster, Kevin Downs, who said HCC, quote, could not have been prejudiced because it did not request that its insured submit a proof of law setting forth its insured's claim. Close quote. That's a docket 40-4. This does not satisfy their burden of showing a lack of prejudice. And as the standard of review is de novo, this court can consider the record evidence and determine that plaintiffs have not disproved prejudice as required under the Estrada case, which, by the way, had to do with the Holoness policy. And I agree that the burden is on them to show a lack of prejudice, but let's just talk in a practical sense here. What is the prejudice? Because your client had an opportunity to go in, conduct a claims adjustment, you know, review the damage that was done. What else would your client have done if it had received the proof of law? Well, it's hard to say because that didn't happen, but as we note in our brief on page 40 in footnote 7, there were a number of issues that remained open at the time. First of all, plaintiffs never submitted their current $900,000-some-odd dollar estimate to HCC during the adjustment of the claim. Okay, let me ask you a question. And I understand what you're saying about that, but how about as far as the $52,000 goes? I mean, you guys were going to pay that anyway, so how would you be prejudiced by not having the proof of law submitted, at least with respect to that $52,000? Well, for one thing, my client presumably would have paid the wrong party. They would have paid New South because that was the only insurer that ever made a claim. But that didn't happen, so how are you prejudiced? Well, I thought you were saying if my client had paid without the proof of law. But just looking to the fact that they never responded to the statement of loss that HCC's adjuster provided that set forth the undisputed actual cash value of the claim. They never gave my client an opportunity to try to resolve the claim pre-suit. Instead, they just hauled off and filed this lawsuit. And now my client has had to incur the cost of litigation when this whole dispute potentially could have been resolved at the pre-suit stage. Also, can you address the causation issue? That, I think, is the strongest argument in your favor. Certainly, Judge Tallman. And yes, I will reiterate that any one of these three issues, if affirmed, would justify the dismissal with prejudice. So to your point about the interior of buildings or IOB limitation, it's clear that this exclusion was triggered in the first instance because the damages to the inside of the buildings were caused by rain. My client has the burden of proving application of exclusion, but then the burden shifts to the insured to show application of the exception to the exclusion, which is for any damages that were caused by rain. May I conclude the answer, Judge Martin? Please. Thank you. So the burden shifts to the insured to prove the exclusion, which is for damages that were caused by rain entering an opening caused by windstorm. And there is no dispute as to the two areas of damage that HCC acknowledged were covered, which includes the hole by the antenna that plaintiff's appellant's counsel referenced. HCC has always acknowledged coverage for those, even though they are interior damages. There's no issue about those. It's the other damages, which not even plaintiff's expert, Mr. Brazuela, can point to any specific damages that he says were caused by water entering through a hole that was created in the building by windstorm. So for that reason, they have failed to establish, as they must on summary judgment, by more than conclusory statements that they have satisfied their burden, that the exception to the exclusion applies. Therefore, we ask for affirmance on all grounds. Thank you. Thank you. Matthew Schruble again on behalf of the appellants. Volume 5 is the affidavit from Mr. Brazuela. In paragraph 8, he explains, during my inspections of the properties, I identified several areas wherein the properties sustained wind-created openings caused by Hurricane Irma that allows for moisture intrusion. In paragraph 10, he explains, based on my review of the documents and inspections, it is my professional opinion, within a reasonable degree of engineering certainty, that the properties sustained opening caused by Hurricane Irma that allowed for moisture intrusion. That's as exacting as you can get as to a causation issue. It's in the affidavit that we submitted. In stark contrast to that. But, counsel, the problem is it doesn't say which water damage was sustained. In other words, the argument of the insurer here is that not all of the water damage that the properties had was suffered during Irma. That, instead, some of it looked like it had been long-lasting, it had been there for some time, and it predated Irma. And what you've read to us does not link Irma and the openings from Irma to specific water damage. Do you have something that you could point us to that would show where those dots are connected? Yes. Two things. First, on page 11 of our reply brief, as we explained, that was never an issue raised by the insurance company in their motion for summary judgment. So, at the time for the motion for summary judgment, that was never at issue. The only issue was whether that exclusion applied or not. Clearly, that's sufficient evidence to show the exclusion did not apply. Issues as to the amount paid by the insurance company was not raised. The court, just on its own, without it being raised by the insurance company, said, yes, I think the $50,000 the insurance company paid was right and should have been accepted. That was never raised. There was never any evidence submitted by the insurance company. Even with that, even with it not being raised, we point out some examples of evidence that we had, including the public adjuster who filed an affidavit setting forth the damages at $900,000. And we also explained that if they had actually raised that issue, then we would have filed even more affidavits, including from our damages expert, James Purcell. We cite to his being disclosed as a record and explained that he would have explained in detail the specific amounts that were covered, but that was never raised by the insurance company. The only issue that was raised was whether there was wind-created openings from IRMA that allowed water intrusion or not, and we filed ample evidence showing that there was. The insurance company filed no summary judgment evidence. Was that information ever supplied to Houston prior to the initiation of litigation? Prior to the initiation, it was not, because as the Bryant v. Giovera case makes clear, and their denial letter makes clear, once an insurance company says we believe that exclusions apply, that your claim is not covered, and that there is no coverage, then the further exchanges of information is useless and unnecessary because those cannot work to resolve that issue. But that's not what they said. They said, yeah, we agree we're liable for $52,000 worth of damages. Your position now is, no, it's $900,000, but you never supplied any documentation to the insurance company to say, here's the other $850,000 worth of damages that you owe us until you sue them. So I put that a lot to understand why you never put the insurance company on notice as to exactly what you're doing. Because the insurer himself, Mr. Holiday, is in the record sending a several-page letter detailing their position and explaining that these damages are not old. They occurred after Hurricane Irma, and they're from openings from the hurricane. And after the position was made very clear, the insurance company said, no, we don't think that's true. We think that they are excluded and denied damage for the interior of the claim, which was essentially the vast majority of the claim, resolved disputes for interior. So they made that clear that they believed it was covered. The insurance company was aware of that claim, aware of the reasons for it. They provided factual explanations for it. And the insurance company said, no, our expert says that it's not caused by the hurricane. And as you can see from page 10 as an example, when the actual evidence from their expert says, for example, do you have any opinions? They say, no. Did you inspect the property? They say, no, we didn't even inspect the roof. So their very own expert said that they did not even inspect the roof on this property, but somehow the trial court decided to accept that expert's opinion and not accept Mr. Bridwell's opinion and also wrongfully went on to rule on issues that were not raised in the motion. All right. Thank you. We've got your case and appreciate the argument. With that. Thank you very much for your time. Thank you.